In the Matter of the Accounting of PEOPLES BANK OF JOHNSTOWN, as Trustee under the Will of DAVID A. WELLS, Deceased, Respondent. JOSEPH D. OLIVER, JR., et al., Respondents; GERTRUDE K. HAYWARD et al., Appellants.

Third Department, July 2, 1953.

*Walter J. Hogan* for appellants.

*Herbert W. Patterson* for Joseph D. Oliver, Jr., and others, respondents.

*Alfred D. Dennison* for trustee, respondent.

HALPERN, J. This case presents an interesting aftermath of *Oliver* v. *Wells* (254 N. Y. 451) decided by the Court of Appeals, in an opinion by Chief Judge CARDOZO, in 1930.

The underlying facts are very complicated; they go back to 1905. On January 30, 1905, Alida G. Wells conveyed the Wells homestead property in the city of Johnstown, New York, to two of her sons, Nathan P. Wells and David A. Wells, reserving the use of the property during her own lifetime. Mrs. Wells exacted from her two sons an agreement that whenever they sold the property, they would pay over to her or to her estate one half of the proceeds of the sale. It was agreed that, if the property was not sold by the sons during their lifetime, it would be sold upon the death of the survivor of the two sons and one half of the proceeds of the sale would then be paid over to the mother or to her estate. Mrs. Wells had two other children, a daughter, Anna Gertrude Oliver, and a son, Eleazer M. Wells, and it was apparently her desire that they should ultimately receive a share of the value of the homestead.

On June 27, 1907, Alida G. Wells also transferred to David A. Wells 290 shares of the stock of the Chicago & Northwestern Railroad Company and on February 27, 1908, she conveyed 60 additional shares, making a total of 350 shares. David A. Wells entered into an agreement that the income of the stock or of the proceeds, if the stock were sold, would be used for the purpose of '' keeping in nice condition and good repair the premises now occupied by us as and for a homestead (of which premises I am one of the owners in fee as tenant in common with my brother Nathan P. Wells) from now until such premises are sold.'' David A. Wells further agreed that, upon the sale of the homestead, he would pay to his mother, Alida G. Wells, her heirs, executors, administrators or assigns '' a sum equal to the value of said stock, or of the proceeds thereof in case of a sale of the same, or the value thereof, and for the payment of which I bind myself, my executors and administrators forever.''

Neither the homestead nor the stock was sold during the lifetime of Alida G. Wells, or during the lifetime of her sons.

Alida G. Wells died March 20, 1909, leaving a will executed January 31, 1905, under the terms of which she bequeathed her residuary estate, which presumably included whatever she might receive on account of the railroad stock, although no specific mention of it was made in the will, as follows:

One fourth of the residuary estate to each of three of her children, Nathan P. Wells, David A. Wells and Anna Gertrude Oliver and the remaining one fourth in trust for her son Eleazer M. Wells for life, thereafter for his son John E. Wells for life, and upon his death, the principal of the trust to go to Nathan P. Wells, David A. Wells and Anna Gertrude Oliver in equal shares, provided that if any of them were not then living but had died leaving a child or descendant surviving, such child or descendant should take the parent's share but that if any of them were not then living and had died leaving no child or descendant, the survivor or survivors and the child or descendant of any deceased child should take the deceased person's share. This trust is hereafter referred to as the Eleazer M. Wells trust.

By her will Alida G. Wells also specifically bequeathed to her daughter and to the Eleazer M. Wells trust '' any and all moneys arising from and upon any written obligations that I have or may have and hold against my said sons, Nathan P. Wells and David A. Wells, or either of them, for or on account of any real estate ''.

Nathan P. Wells died intestate in 1916, leaving no widow or children. Eleazer M. Wells died in 1918, leaving a widow, Elsina M. Wells, and a son, John E. Wells. He bequeathed his entire residuary estate by his will to his widow Elsina M. Wells.

David A. Wells died May 8, 1928, leaving a widow but no children. In his will, David A. Wells provided that his entire residuary estate should be held in trust for the benefit of his widow during her lifetime and upon her death, certain gifts of income and principal should be made to designated beneficiaries, as set forth in detail below. Among the beneficiaries were his sister, Anna Gertrude Oliver, and his nephew, John E. Wells.

David A. Wells desired to have his widow continue to occupy the Wells homestead and to continue to enjoy the income of the Chicago & Northwestern stock. In paragraph Sixth of his will, he referred to the fact that his mother had made '' certain provisions in her will for the disposition of the real estate and 350 shares of stock of the Chicago & Northwestern Railway Company '' and he requested '' the beneficiaries under my mother's said will to consent and grant unto my said wife the income from the aforesaid stock and the right to use and occupy the aforesaid real estate so long as she may live.''

David A. Wells sought to bring about the acceptance of his request by attaching to his gifts to Anna Gertrude Oliver and John E. Wells, a condition that they consent to the use of the real estate by his widow and the payment of the income of the stock to her during her lifetime. However, he overlooked the fact that upon the death of Nathan P. Wells intestate, in 1916, a part of his half interest in the homestead had passed to his brother Eleazer M. Wells and in turn had passed, under the will of Eleazer M. Wells, to the latter's widow Elsina M. Wells.

Similarly, whatever interest Nathan P. Wells had in the railroad stock or its proceeds under the will of Alida G. Wells also had passed by intestacy in part to Eleazer M. Wells and, by his will, to his widow. Moreover, David A. Wells, in asking the beneficiaries under his mother's will to consent to his wife's receiving the life income from the stock, disregarded the fact that the beneficiaries had no title to the stock or its proceeds as such; they had an equitable interest in the proceeds as legatees of the residuary estate but the proceeds would normally have to be paid to the executor of the mother's estate in the first instance.

David A. Wells treated the beneficiaries under his mother's will as if they were the owners of the stock and, for facility of statement, we may, for the moment, treat them in the same way.

Upon the basis of this assumption, Nathan P. Wells had held a one-fourth interest in the stock, since he was the legatee of one fourth of the residuary estate of Alida G. Wells. One third of this (constituting a one-twelfth interest in the stock) passed to each of his brothers and his sister so that David A. Wells, Anna Gertrude Oliver and Eleazer M. Wells each received a one-twelfth interest in the stock from Nathan P. Wells, in addition to the interests they had received directly from their mother. Upon the subsequent death of Eleazer M. Wells, his interest passed, under his will, to his widow Elsina M. Wells. At the time of the death of David A. Wells, the beneficial ownership of the stock stood as follows:

| | | |
|---|---|---|
| David A. Wells | $\frac{1}{3}$ | ($\frac{1}{4}$ from mother) |
| | | ($\frac{1}{12}$ from Nathan P. Wells) |
| Anna Gertrude Oliver | $\frac{1}{3}$ | ($\frac{1}{4}$ from mother) |
| | | ($\frac{1}{12}$ from Nathan P. Wells) |
| Eleazer M. Wells Trust, of which John E. Wells was life beneficiary | $\frac{1}{4}$ | (from mother) |
| Elsina M. Wells | $\frac{1}{12}$ | (from her husband, Eleazer, who had in turn received it from Nathan P. Wells). |

In his will, David A. Wells mistakenly assumed that Anna Gertrude Oliver and John E. Wells owned all the beneficial interests in the homestead and the stock, except the interests which he himself owned, and he therefore apparently believed that, upon their compliance with the conditions attached to the gifts to them, all interests would be covered. As has been indicated above, David A. Wells overlooked the interest of Elsina M. Wells in the homestead and the stock and he also overlooked the fact that John E. Wells only had a life interest in the Eleazer M. Wells trust and that the principal of the trust might ultimately pass to the children of Anna Gertrude Oliver if she predeceased John E. Wells.

Under David A. Wells' will, the entire residuary estate was placed in trust, with the income payable to his widow during her lifetime. After her death, the income was to be distributed as follows: one-fifteenth part to the testator's wife's niece Gertrude S. Ackerknecht during her lifetime, twelve-fifteenths to her daughter Gertrude Katherine Ackerknecht during her lifetime and one-fifteenth to Mary Ackerknecht, another daughter of Gertrude S. Ackerknecht, during her lifetime. The remaining one-fifteenth was to go to John E. Wells

during his lifetime. The will contained a further provision that upon the death of any one of the beneficiaries, the income was to be paid to the surviving beneficiaries until the death of the last beneficiary. Thereafter, the whole of the principal was to be paid to the testator's sister Anna Gertrude Oliver. Both the gift of life income to John E. Wells and the gift of the principal to Anna Gertrude Oliver were made subject to the condition that they '' consent to the use of the income of the Chicago & Northwestern Railway stock and the use of the real estate by my wife as hereinbefore provided ''.

An action was brought to construe the will of David A. Wells. Two principal questions were raised, one, the validity of the gift over of the income to the survivors upon the death of any of the trust beneficiaries, and the other, the validity of the conditions attached to the gifts to Anna Gertrude Oliver and John E. Wells. That case (*Oliver* v. *Wells, supra*) ultimately reached the Court of Appeals, which affirmed this court, which in turn had affirmed the decision of Mr. Justice HEFFERNAN at Trial Term (254 N. Y. 451, affg. 229 App. Div. 356). The gifts over of the income were held to be invalid as violating the rule against perpetuities but the primary trusts were held to be valid and the gift of the remainder was accelerated to take effect upon the termination of the primary trusts. The conditions attached to the gifts to John E. Wells and Anna Gertrude Oliver were held to be valid and operative as to them, even though other persons also had interests in the homestead and in the stock.

After the decision of the construction action by the Court of Appeals, Anna Gertrude Oliver and John E. Wells executed formal instruments in December, 1930, consenting to the payment of the income of the stock to Katherine M. Wells during her lifetime and to her use and occupancy of the homestead during her lifetime.

Thereafter, in 1933, Elsina M. Wells died and her interest in the stock and the homestead passed to her son John E. Wells.

Anna Gertrude Oliver died in 1938, leaving a will in which she bequeathed her residuary estate to her four children, Joseph D. Oliver, Jr., Gertrude Oliver Cunningham, Susan Catherine Oliver and James Oliver, II. James Oliver, II, subsequently died and Joseph D. Oliver, Jr., is the executor of his estate.

Katherine M. Wells, the widow of David A. Wells, died January 22, 1945. The homestead was sold shortly thereafter; no controversy has arisen as to the disposition of the proceeds of

that sale. In the meantime, the railroad stock had become worthless during the depression of the 1930's. Although, at the time of the death of David A. Wells in 1928, it had a value of $32,331.25, it is undisputed that, at the time of the death of David A. Wells' widow in 1945, the stock had no value.

In 1945, the Peoples Bank of Johnstown, New York, the trustee of the trust of the residuary estate under the will of David A. Wells, instituted the proceeding which is the subject of this appeal, by filing a petition in the Surrogate's Court for the judicial settlement of its accounts, preliminary to setting up the separate trusts which were to become operative upon the death of the testator's widow.

The children of Anna Gertrude Oliver, joined by John E. Wells, interposed a document which they termed an objection to the account, asserting that pursuant to the provisions of the contract between Alida G. Wells and David A. Wells, a sum equal to the value of the 350 shares of railroad stock as of the date of the death of David A. Wells was payable to the beneficiaries under the will of Alida G. Wells.

Hearings were held upon the so-called objections and the Surrogate granted a decree, from which this appeal is taken, directing the payment by the trustee of the sum of $21,554.16, being two thirds of the value of the stock at the time of the death of David A. Wells, one third of the stock having been beneficially owned by David A. Wells himself. Under the decree, the children of Anna Gertrude Oliver are to receive $10,777.08; John E. Wells, as trustee of the Eleazer M. Wells trust, is to receive $8,082.81 and John E. Wells, individually, is to receive $2,694.27.

The Surrogate held that David A. Wells was under a contractual obligation to pay the value of the stock as of the time of his death to Alida G. Wells or her estate. He further held that the consents to the postponement of the maturity of the obligation by Anna Gertrude Oliver and John E. Wells were ineffective because only the executor of the estate of Alida G. Wells could release or modify the obligation of David A. Wells. The Surrogate also held that the consents were not effective as to the share of the proceeds of the stock which would have gone into the Eleazer M. Wells trust, for the additional reason that Anna Gertrude Oliver and John E. Wells had no power to bind the

children of Anna Gertrude Oliver as the remaindermen of the trust.

Since the children of Anna Gertrude Oliver, as the residuary legatees of her estate, are also entitled to take the residuary estate of David A. Wells, through their mother, who was the residuary legatee, the principal effect of the Surrogate's decree is to accelerate the time of payment to them of a part of the principal of David A. Wells' residuary estate and to correspondingly reduce the amount upon which the income beneficiaries under the trusts set up by the will of David A. Wells will receive income. Apart from John E. Wells, these income beneficiaries are the niece and grandnieces of the testator's wife. The present controversy is thus principally between these relatives of the testator's wife and the testator's own nieces and nephews, the children of Anna Gertrude Oliver, who are to receive the principal. The niece and grandnieces of the testator's wife will, as a result of the Surrogate's decree, be deprived of the income on fourteen fifteenths of $21,554.16 during their lives. The effect on the interests of John E. Wells is more complicated but he is also favored by the decree. He will be deprived of the income on one fifteenth of $21,554.16 during his lifetime but, on the other hand, he will receive the whole of the income on $8,082.81 during his lifetime and he will immediately receive the sum of $2,694.27 outright.

The corpus of the trust under David A. Wells' will, the income of which is payable to the niece and grandnieces of the testator's wife and John E. Wells, is over $250,000 so that it is apparent that the amount in controversy here is quite small compared to the size of the total estate; the complexity of the legal problems and the expense of the litigation are altogether out of proportion to the amount in controversy.

The relationship between David A. Wells and his mother growing out of his agreement with respect to the stock transferred to him was of an unusual character. David A. Wells was, concededly, not a trustee of the stock; he was explicitly declared to be " the absolute owner " of the stock. His obligation was a contractual one, to pay his mother or her estate a sum of money equivalent to the value of the stock at the time of the maturity of the obligation or the amount realized upon the sale of the stock, in the event that the stock had been previously sold. The obligation matured upon David A. Wells' death, since the stock or the proceeds of the sale of the stock

were to be held by him and used to maintain the homestead until the homestead was sold and, under the terms of the separate agreement as to the homestead, it was to be sold upon the death of the survivor of Nathan P. Wells and David A. Wells. Upon David A. Wells' death, it became the obligation of his estate to pay the value of the stock, or the proceeds of any prior sale, to the executor of his mother's estate.

The claim of the respondents, while put in the form of so-called objections, is really a claim for moneys alleged to be owing by David A. Wells to the estate of Alida G. Wells.

The principal defense to the claim on the merits is that consent had been given by the beneficiaries of the Alida G. Wells estate to a modification of the obligation. The Surrogate's holding that the consents were ineffective because no one but the executor of the mother's estate could give consent to the modification of David A. Wells' obligation cannot be accepted as the basis for a solution of this complicated controversy. If the Surrogate's view were carried through to its logical conclusion, the respondents would have no standing to make any demand on the David A. Wells estate at all. The only one who could make that claim would be the executor or administrator c. t. a. of the estate of Alida G. Wells. The proceeds of the claim would then become part of the estate of Alida G. Wells and they would have to be distributed through the intervening estates of Nathan P. Wells, Eleazer M. Wells and Anna Gertrude Oliver before the respondents could obtain any share. This objection does not seem to have been raised before the Surrogate and the case was tried and decided upon the assumption that the ultimate beneficiaries were entitled to make a direct claim against the estate of David A. Wells. For the purpose of expediting the termination of this litigation, we shall make the same assumption and treat the case as if the claim had been distributed in kind by the executor of Alida G. Wells' estate to the residuary legatees and, in turn, had been distributed by the personal representatives of the intervening estates. We mention the point here only to indicate the inconsistency in the Surrogate's decision in holding, on the one hand, that the beneficiaries may make a direct claim and, on the other hand, that the consents given by the beneficiaries in 1930 were ineffective because they were given directly and not through the executors or administrators of the estates involved.

In any event, it would be highly inequitable to allow the beneficiaries to escape from the consequences of their voluntary

consents after they had received and retained the benefits given them in return for their consents. The consents must be held, in equity, to be binding upon the interests of the beneficiaries who gave them. This was implicit, if not expressed, in the decision of the Court of Appeals upholding the validity of the conditions in David A. Wells' will, in compliance with which the consents were given. Even though the residuary legatees under the Alida G. Wells will did not have legal title to her claim against David A. Wells growing out of the stock transaction, they had a beneficial or equitable interest which was bound by the consents given by them. Even though the legatee of an estate or the beneficiary of a trust has no right to enforce a claim against third parties directly (*Hart* v. *Goadby,* 138 App. Div. 160; Restatement, Trusts, § 281), he may, by release or consent, estop himself from seeking enforcement of the claim through the executor or trustee in whom the legal title to the claim is vested (*Doyle* v. *New York, Ontario & Western Ry. Co.,* 66 App. Div. 398; *Rice* v. *Postal Telegraph-Cable Co.,* 174 App. Div. 39, affd. 219 N. Y. 629).

We therefore hold that the consents given by Anna Gertrude Oliver and John E. Wells were valid and effective to the extent of any interest which they would have received upon an enforcement of the claim and distribution of the proceeds.

The effect of the consents must be determined in the light of the hybrid nature of David A. Wells' obligation to his mother under the stock agreement and in the light of the request which he made in his will that the beneficiaries of his mother's estate consent to the payment of the income of the stock to his widow during her lifetime. The consent given by the beneficiaries was in terms a consent to the " payment of the income from said stock, viz.: ' 350 shares of stock of the Chicago & Northwestern Railway Company ' to Katherine M. Wells during her lifetime ". This necessarily implied consent to the stock being held intact throughout that period. In his will, David A. Wells did not merely request consent to the value of the stock being added to the trust for his widow's benefit; he asked that consent be given to her receiving the income upon the specific stock. The consent which David A. Wells requested and which the beneficiaries gave, necessarily carried with it an assumption by the beneficiaries of the risk that the stock might decline in value during the lifetime of the widow. The beneficiaries assumed this risk, in addition to giving up the income on the stock for Katherine M. Wells' lifetime, in return for the very

valuable gifts made to them in the David A. Wells will. As has been pointed out above, the obligation of David A. Wells, while contractual in character, was of a hybrid nature. He was bound to pay only the value of the stock at the time of the maturity of his contractual obligation. Upon the extension of the time of maturity, the obligation became one to pay the value of the stock at the termination of the period of the extension. The stock being then of no value, there was no obligation to pay anything to the beneficiaries who had given their consent to the extension.

To the extent to which the children of Anna Gertrude Oliver received an interest in the proceeds of the stock through their mother, they are bound by the consent given by her and they are equitably estopped to complain about the decline in value which occurred during the period of postponement agreed to by their mother. The allowance of the claim in their favor of $10,777.08 was therefore improper.

The share of the proceeds of the stock which would have gone into the Eleazer M. Wells trust presents greater difficulty. John E. Wells, who was the life beneficiary of the trust at the time of the death of David A. Wells, gave his consent, but he had no power to give a consent which would be binding upon the remaindermen of the trust. Anna Gertrude Oliver's right to the remainder was contingent upon her surviving John E. Wells. Upon her failure to survive, the remainder vested indefeasibly in her children, there being no further requirement that the children survive the life tenant. The children did not take their interest in this remainder through their mother but they took directly as remaindermen under the will of Alida G. Wells. They are therefore not estopped by their mother's consent and they are entitled to have the claim of the Alida G. Wells estate enforced against the David A. Wells estate for their benefit. Since, however, John E. Wells is estopped to claim the income upon the amount allocable to the Eleazer M. Wells trust, during his lifetime, by reason of his consent, this sum should not be presently paid over to the Eleazer M. Wells trust but should be held as part of the residuary trust under the David A. Wells will until the death of John E. Wells. At that time, the remaindermen will be entitled to the payment of the sum of $8,082.81, the amount by which the corpus of the Eleazer M. Wells trust would have been increased, if the stock had been sold at the time of David A. Wells' death and its value then paid over to the estate of Alida G. Wells. At one point in their

.brief, the appellants concede that this amount will be owing to the remaindermen at the time of the death of John E. Wells but at another point they suggest that the claim of the remaindermen should be made against John E. Wells rather than against the David A. Wells estate upon the ground that he had given his consent as trustee and that, if it is found that his consent was unauthorized, he should bear the loss. This suggestion must be rejected since there is nothing in the consent given by John E. Wells to indicate that he gave it in his capacity as trustee or that he undertook in any way to bind the interest of the remaindermen.

As to the share which Elsina M. Wells, the widow of Eleazer M. Wells, received under the will of her husband and which he in turn had received from Nathan P. Wells (which David A. Wells had overlooked), John E. Wells is now beneficially entitled to that share but at the time of David A. Wells' death, Elsina M. Wells was still living and she would have received that share if the stock had been then sold and its value paid over to the estate of Alida G. Wells. Elsina M. Wells did not give her consent to the postponement of David A. Wells' obligation and if she were still living today, she would not be estopped to assert her claim. The consent given by John E. Wells does not estop him from claiming the share to which he is entitled under his mother's will. At the time John E. Wells gave his consent in 1930, his consent related only to his interest as life beneficiary under the Eleazer M. Wells trust; it could not bind his mother nor could it bind the interest which he subsequently received from his mother. The direction in the decree that John E. Wells be paid $2,694.27 should therefore be allowed to stand.

The decree should therefore be modified in accordance with this opinion and, as modified, affirmed, with costs to each of the parties filing a brief, payable out of the estate. Settle decree on notice.

Foster, P. J., Bergan, Coon and Imrie, JJ., concur.

Decree modified, on the law and facts, in accordance with the opinion, and as modified, affirmed, with costs to each of the parties filing a brief, payable out of the estate. Settle decree on notice. [See *post,* p. 846.]